THE FIRST NATIONAL BANK OF PRINCETON, EXEC., ETC., PLAINTIFF, v. EDITH NORTHRUP, ET ALS., DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided July 23, 1952.

*Mr. Ralph S. Mason*, attorney for plaintiff.

*Messrs. McCarthy & McCarthy*, attorneys for defendant Edith Northrup (*Mr. John F. McCarthy, Sr.*, appearing).

*Messrs. Minton, Dinsmore & Lane*, attorneys for defendant Ajax Electrothermic Corporation (*Mr. H. Collin Minton, Jr.*, appearing).

GOLDMANN, J. A. D.   This action is the outgrowth of *Ajax Electrothermic Corporation v. First National Bank of*

*Princeton,* docket C–2342–49, in which Edith Northrup and Ajax Electrothermic Corporation, beneficiaries of a trust set up under the last will and testament of Edwin Fitch Northrup sought to accelerate and terminate the trust. The Chancery Division having dismissed the complaint in that action because it failed to state a claim against the defendant upon which relief could be granted, plaintiffs appealed and the Supreme Court, upon certification of the appeal on its own motion, affirmed. 7 *N. J.* 82 (1951). The pertinent sections of the will relating to the trust are set out in that opinion.

The complaint in *Ajax Electrothermic Corporation v. First National Bank of Princeton* was filed August 11, 1950. After reciting the terms of the trust, it alleged that Ajax had purchased a life annuity policy from the Prudential Life Insurance Company of America, upon application of Edith Northrup, under which she was to receive $200 a month for life. The policy was purchased because Ajax felt that the $150 monthly income which Edith Northrup received under paragraph Tenth of the will was inadequate. The complaint further alleged that Edith Northrup renounced her interest of $150 per month for life under the will and in lieu thereof accepted the life annuity policy paying $200 a month.

At the time that complaint was filed Edith Northrup had not, in fact, actually renounced in writing her beneficial interest in the trust. The First National Bank of Princeton, executor and trustee under the will, filed its answer on September 22, 1950, setting forth eight separate defenses which indicated that it opposed the acceleration and termination of the trust because the intent of the testator and settlor would thereby be frustrated. Counsel for the plaintiffs then realized that the mere allegation that Edith Northrup had renounced her interest in the trust was not sufficient. Examination of the *Bennett v. Fidelity Union Trust Company* cases, 122 *N. J. Eq.* 455 (*Ch.* 1937) and 123 *N. J. Eq.* 198 (*Ch.* 1938) led counsel to the conclusion that our courts would not consider the question of acceleration and termination of a trust

unless the release was absolute and immediately effective, and unless it had been delivered to the trustee.

Thereupon, on October 30, 1950, Edith Northrup executed a release, duly acknowledged, which recited:

"* * * I, EDITH NORTHRUP, desiring to terminate said life estate and trust, do therefore as life tenant of aforesaid, in consideration of one ($1.00) Dollar and other good and valuable consideration paid to me by the remaindermen and said Executor and Trustee, do hereby for myself, my heirs, executors and administrators, remise and release my respective life estate to which I have or may become entitled by virtue of the said last Will and Testament of Edwin Fitch Northrup, my brother, so as to terminate said life estate, and I do hereby relieve, release and forever discharge the said First National Bank of Princeton, New Jersey, Executor and Trustee of aforesaid, from all further duties and obligations of their said office concerning my right, title, and interest in my respective life estate in said trust property.

This release to take effect immediately and unconditionally."

On the same date a memorandum of agreement was entered into between Ajax Electrothermic Corporation and Miss Northrup reading, in part, as follows:

"The party of the first part has purchased for the party of the second part, Edith Northrup a life annuity paying Two Hundred $200.00) Dollars monthly to Edith Northrup, with no payments after death of the life annuitant, nonassignable, for the sum of Thirty-three Thousand Four Hundred and Ninety ($33,490.00) Dollars, from the Prudential Insurance Company of America, home office in Newark, New Jersey. The consideration for the purpose of this above annuity for Edith Northrup, party of the second part, is a unconditional release, executed and delivered to The First National Bank of Princeton, New Jersey, Executor and Trustee under the last Will and Testament of Edwin Fitch Northrup, brother of Edith Northrup, by the party of the second part releasing her life interest of $150.00 monthly under paragraph ten (10) of the aforesaid Will."

These two instruments were filed with the court on November 3, 1950. Counsel for the trustee raised no objection that the release and agreement were executed more than a month and a half after the complaint in the *Ajax Electrothermic Corporation* case was filed, but was willing that the question of acceleration and termination of the trust be determined

on the merits. The Supreme Court refused to accelerate and terminate the trust because to do so would frustrate the intention of the testator and work a fraud on the will.

The trustee now brings this action, reciting that Miss Northrup has made demand upon it to withdraw her release and to receive payments in accordance with the terms of the will, for the reason that the trust has not been terminated. The present complaint further recites that Ajax advanced $1,200 to Miss Northrup from the time of the delivery of the release by her to the trustee up to July 15, 1951, under the provisions of the agreement entered into between her and Ajax, and that Ajax has requested a refund of the sum so advanced. The, trustee demands judgment construing the will and instructions concerning its duties in the premises, particularly with respect to the following questions:

(a) Was the release delivered by Edith Northrup to the Trustee immediate and unconditional?

(b) If the release was immediate and unconditional, may it, nevertheless, be withdrawn by Edith Northrup?

(c) Is Edith Northrup entitled to receive payments in accordance with paragraph "TENTH" of the Last Will and Testament during the term of her natural life after she has delivered to the Trustee an unconditional release of her life interest?

(d) Is the Ajax Electrothermic Corporation entitled to reimbursement for the moneys advanced to Edith Northrup by the Corporation in the amount of $1,200.00?

(e) If the Trustee is not to make payments of $150.00 monthly to Edith Northrup under paragraph "TENTH", is this amount to be paid to Ajax Electrothermic Corporation under paragraph "TENTH" or is this amount to be accumulated and added to the principal amount of the Trust?

(f) If the $150.00 monthly is to be accumulated and added to the principal amount of the trust, is there to be accumulated, in addition, an item sufficient to pay the income tax on the accumulated amount before a distribution is made of the net income to Ajax Electrothermic Corporation?

Upon plaintiff's motion an order designating class representatives under paragraphs Tenth and Eleventh of the will and prescribing notice was entered on July 17, 1951. The class representatives, Miss Northrup, Ajax Electrothermic

Corporation and the Attorney-General (made a party defendant for the reason that the trustee in its discretion is authorized under certain circumstances by paragraph Thirteenth of the will to give the remainder of the trust to some worthy charity or charities) were served. Notice was published and copies of the notice and the complaint mailed to the officials and employees of Ajax whose names and addresses were known to the plaintiff, in accordance with the court order. The Attorney-General did not answer and has been defaulted. The other parties defendant have answered, admitting the fact allegations of the complaint and leaving the plaintiff to its proofs as to the questions presented for determination. However, Edith Northrup represents that the questions are academic in view of the decision of the Supreme Court in the *Ajax Electrothermic Corporation* case.

By the amended pretrial order the parties stipulate that if the release given by Edith Northrup be held revocable, the trustee will reimburse Ajax from such funds as would have been payable to Edith Northrup out of the income of the trust, in an amount not in excess of the total sum paid by the corporation to her after October 30, 1950.

Edith Northrup's release was unconditional and absolute in form. The question is, was it unconditional and absolute in substance? Trusts are peculiarly the subject of equitable consideration. Equity will always look behind the form to determine the substance of an arrangement.

The clear intention of the testator was to provide a monthly income to his sister for life. He had made that intention known to the officers of Ajax in his lifetime and he gave expression to it in his will. Not only the officials of Ajax, but the trustee bank knew that decedent wanted to take care of his sister. Soon after decedent's death there were conferences between Ajax and the trust department of the bank as to how best to provide the $150 monthly payment to take care of Miss Northrup. Several possibilities were explored, and the trust officer of the bank suggested that an annuity might be purchased. However, the corporation did not then

have a sufficient sum in hand, accumulated under paragraph Tenth of the will, to buy such an annuity.

The suggestion of an annuity was revived in 1950. On July 12, 1950 Mr. A. Dean Meyer, vice-president of Ajax, wrote Miss Northrup reviewing the $150 monthly provision of the will and pointing out that these payments depended largely on the yearly dividends paid by Ajax. (The main source of income was the 200 shares of Ajax common in the trust.) These dividends, he explained, were subject to the hazards of changing conditions of the corporate business. The corporation now had an opportunity to eliminate any doubt about Miss Northrup receiving an assured income for life and at the same time to provide a larger monthly payment by purchasing an annuity from a recognized insurance company. The letter suggested that if Miss Northrup was interested in terminating her life benefit under the trust and substituting the annuity payments in lieu thereof, she join the company in petitioning the courts of New Jersey to terminate the trust.

Miss Northrup replied immediately. In a letter to counsel for Ajax she advised that she desired to join the company in so petitioning the courts to terminate the trust, and requested him to act in her behalf. Her letter concluded:

"Would it be satisfactory if, in case I join this petition to terminate the trust, it be upon condition the annuity be purchased as suggested and that any order entered by the Court provide for substitution of the annuity?"

The complaint seeking acceleration and termination of the trust was filed soon after, on August 11, 1950. Neither the trustee bank nor its counsel knew of that action until the summons and complaint were served. Nor were they consulted about or informed of any release before it was actually executed on October 30, 1950. The release was delivered to the trustee the next day.

It is clear from the evidence that the purpose of executing and delivering the release to the trustee was to get the ques-

tion of acceleration and termination squarely before the court. The step was considered necessary under the *Bennett* cases. Neither Ajax, its counsel, nor Miss Northrup considered that her rights under the will were to be destroyed in the event that the court decided adversely to the plan for accelerating and terminating the trust. They were forced by decisional law to file the release which they did. And it may be observed that the bank could hardly have considered the release as something completely independent of the pending action. The conditional nature of the release should have been and was fairly apparent. In form it was absolute and unconditional, but in essence it was to have no legal and binding effect unless the trust was terminated.

The release will be held to have been conditional in substance. The life beneficiary is not to be penalized because the courts refused to give their approval to a plan which would have given her an assured income for life in an amount that was one-third greater than the monthly payments provided under her brother's will.

■ There is another reason why the trust should be administered as it was before the filing of the complaint in the *Ajax Electrothermic Corporation* case. That reason is failure of consideration for the release given.

The release had two purposes, termination of the trust and obtaining the benefits of the $200 a month annuity. Both purposes failed. The Supreme Court held that the trust could not be terminated without violating the testator's intention. Miss Northrup has never received the benefits of the annuity policy. There was, therefore, no legal, valuable and adequate consideration for the release. *Cf. Bennett v. Fidelity Union Trust Company,* 123 *N. J. Eq.* 198, 199 (*Ch.* 1938). The consideration failed by operation of law—the decision of the Supreme Court in the *Ajax Electrothermic Corporation* case.

It is argued on behalf of both Ajax and Miss Northrup that the decision of the Supreme Court automatically restored the parties to their original positions. The court decided

that the only method by which the trust could be terminated was the death of Miss Northrup. The argument made is that by refusing to terminate the trust, the Supreme Court by inference indicated that the trust was to be administered as heretofore. It is not necessary to discuss this contention in view of the conclusion that the release was conditional in substance and that there was a failure of consideration.

It is to be observed that no interests have intervened by reason of the abortive attempt to accelerate and terminate the trust. Such interests could arise only under paragraph Thirteenth of the will. By the terms of that paragraph the trustee was authorized to give the residue of the estate to such worthy charity or charities as it might designate, "in the event the said Ajax Electrothermic Corporation, or such other parties as determined by my executor and trustee entitled to benefits hereunder in accordance with item tenth hereof cannot be assembled or ascertained, refuses or is prohibited to accept any or all of the benefits hereby created, * * *." An examination of the entire will reveals that the quoted language of paragraph Thirteenth has meaning only when considered in connection with paragraph Twelfth. That paragraph reads:

"In the event the Ajax Electrothermic Corporation is merged, amalgamated, reorganized, sold or combined with some other corporation or institution, then, upon the occasion of any of the aforesaid events of this paragraph, I direct that my trustee shall determine to the best of its ability if the personnel of the aforesaid Ajax Electrothermic Corporation remains intact, substantially as a whole, either independently, or in connection with others; and upon such determination pay over to such organization, institution, or otherwise, funds and property as herein provided in substitution to the said Ajax Electrothermic Corporation. * * *"

The testator was concerned in paragraph Thirteenth with the trustee being unable to identify the personnel of Ajax after such merger, amalgamation, reorganization or combination. That paragraph was to become operative only if paragraph Twelfth did not enable the trustee to make distribution of the remainder.

Paragraph Thirteenth cannot be construed as dealing with Miss Northrup. The trustee did not have to "determine" who she was; her identity was already apparent. This conclusion is further strengthened by the language of the paragraph which uses the word "parties" and refers to them as not being "assembled or ascertained."

The time when some worthy charity or charities may be designated by the trustee will arrive only (1) after Miss Northrup has died, and (2) if the personnel of Ajax cannot be "assembled or ascertained," after the merger, amalgamation, etc., of Ajax. Accordingly, no interests have intervened so as to make inequitable the restoration of the trust arrangement to its original status.

The trustee is therefore advised and instructed that Miss Northrup may withdraw her release and that she is entitled to receive monthly payments of $150 in accordance with paragraph Tenth of the will during the term of her natural life. Ajax is entitled to reimbursement of all monies advanced by it to Miss Northrup after October 30, 1950.